**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cr-00002-TWP-VTW |
| | ) |
| ZACHARY DION WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Zachary Dion Williams' ("Williams") Motion to Suppress. ([Filing No. 54](#).) Williams is charged by Indictment with Possession With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ([Filing No. 1](#).) He seeks to suppress all evidence obtained by the Government, directly or indirectly, as a result or consequence of an illegal stop, search and seizure and subsequent custodial interrogation on or about November 19, 2019. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and determines that the Motion to Suppress should be **denied**.

**I. FINDINGS OF FACT**

There are no factual disputes to be resolved regarding the Motion to Suppress, so no evidentiary hearing is necessary. ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.") *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011); *see also United States v. Moreland*, 703 F.3d 976, 981–82 (7th Cir. 2012). In addition, the relevant facts are corroborated by video recordings of the traffic stop.

Indiana State Police Trooper Miller ("Trooper Miller") is a K9 and interdiction officer, assigned to patrol Indiana's highways in an attempt to apprehend individuals who are committing criminal offenses along the highway. On November 20, 2019, Trooper Miller was on patrol in Jackson County, Indiana, observing vehicles on Interstate 65. While travelling south on I-65, he observed a silver Chevrolet Impala traveling south, when the Impala abruptly changed lanes while simultaneously signaling. Trooper Miller initiated a traffic stop for failure to signal for 300 feet as required by Indiana law. Prior to initiating the traffic stop, his in-car camera activated and recorded the traffic stop and subsequent events. ([Filing No. 57 at 1-2](); [Filing No. 55 at 2]().)

The vehicle continued to travel for several feet before it stopped and the passenger can be seen making furtive movements. When the vehicle stopped, Trooper Miller made contact with the driver, who was eventually identified as Zachary Williams. Williams exited the vehicle, stating that the driver's side window would not roll down. Trooper Miller requested to see the vehicle registration and Williams' driver's license. Williams informed Trooper Miller that he did not have the vehicle registration, but he was able to produce a bill of sale for the vehicle. Williams initially told Trooper Miller that he had his driver's license but soon indicated that he was unable to produce it because he had lost his wallet and he had no form of identification.

Trooper Miller requested that Williams have a seat in the front passenger seat of his patrol vehicle so that Trooper Miller could identify him. As the two entered the patrol car, Trooper Miller's K9 partner can be heard on the video barking in the background. Williams stated that his name was John T. Tapscott and he provided a date of birth. He initially stated his year of birth was May 1999 but later changed it to May 1990. When Trooper Miller inquired as to where Williams was "headed" Williams responded that he was traveling to visit his sick father in Williamsport.

Trooper Miller exited the patrol vehicle and approached the Impala to check the VIN. While doing so, he made contact with the front seat passenger, Mark Sneed ("Mr. Sneed"). Mr. Sneed stated they were traveling to get the car title, although he could not identify where they were going and he made no mention of visiting Williams' father. Mr. Sneed identified the driver as his brother, "Zach Williams." *Id*.

Upon returning to the patrol vehicle, Trooper Miller gave Williams his *Miranda* warnings and asked if there was "anything in the vehicle". Williams responded, "probably just a little weed." Trooper Miller requested permission to search the vehicle, and Williams declined consent. Trooper Miller retrieved his K9 partner from his vehicle and began a sweep of the Impala. The K9 provided a positive alert for narcotics on the vehicle. Approximately sixteen and a half minutes had passed since the initiation of the traffic stop. By this time, other officers had arrived on the scene.

Based upon his belief that the dog sniff resulted in a positive indication of drugs and Williams' admission that marijuana was inside the vehicle, officers began to search the interior of the vehicle. As a result of the search, 510.9 grams of methamphetamine was located under the driver's seat. Williams later provided his true identity. *Id*. Williams and Sneed were placed under arrest. (Filing No. 55 at 2.)

On February 6, 2020, a federal grand jury returned an Indictment charging Williams with Possession With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Filing No. 1.) On that same date, the Court entered its pretrial discovery order. (Filing No. 13.) The Court ordered that all pretrial motions, including motions to suppress evidence, be filed within thirty days after the appearance of counsel. *Id.* at 9. On February 14,

2020, counsel for Williams entered his appearance. More than a year later, on April 2, 2021, Williams filed the instant Motion to Suppress. ([Filing No. 54](#).)

## II. CONCLUSIONS OF LAW AND DISCUSSION

In his Motion to Suppress, Williams asserts that the evidence obtained against him as a result of the traffic stop and the subsequent search of his vehicle violated the Fourth Amendment of the United States Constitution. Specifically, "the initial stop and search … and the vehicle … were all without a warrant" and "[Williams'] prolonged detention during the traffic stop violated [his] rights under the Fourth Amendment, and all evidence from the subsequent search of his vehicle must be suppressed", in addition, "[a]ll fruits of the illegal detention, search and arrest must also be suppressed." (quoting *Wong Sun v United States*, 371 U.S. 471 (1963)). ([Filing No. 55 at 1](#).)

In contrast, the Government asserts that the video of the traffic stop demonstrates that Trooper Miller had sufficient probable cause to conduct a traffic stop; that the traffic stop was not unreasonably prolonged; and Trooper Miller developed reasonable suspicion of a crime independent of the traffic violation to justify the deployment of his K9 and the subsequent search of Williams' vehicle.

### A.     The timeliness of the Motion

The Government first argues that Williams' Motion should be denied because it was filed untimely. ([Filing No. 57 at 4](#).)   Fed. R. Crim. P. 12(b)(3)(C) provides that the court may set pretrial motion deadlines. Here, the Court's pretrial order stated that pretrial motions should be filed "within 30 … days after … the appearance by counsel". ([Filing No. 13 at 9](#).) Counsel for Williams entered his appearance on February 14, 2020. ([Filing No. 15](#).) Based on the 30 day deadline, Williams was required to file his suppression motion by March 16, 2020. Williams'

4

Motion to Suppress was filed on April 2, 2021, making it untimely. Thus, argues the Government, Williams' Motion should be denied because he has failed to show "good cause" for his untimeliness. *See United States v. Combs*, 657 F.3d 565, 568 (7th Cir. 2011); *United States v. Daniels*, 803 F.3d 335, 352 (7th Cir. 2015).

The Court can think of several good causes why Williams' Motion was not filed by March 16, 2020. The coronavirus pandemic and shutdown of courts throughout the country occurred right around the time Williams' Motion should have been filed. For several months, defense lawyers were unable to meet with their clients, especially those held in custody. Although Williams has not replied or explained why his Motion to Suppress was not timely, the unusual circumstances and challenges caused by the pandemic likely delayed counsel's filing of the motion. Moreover, in its discretion, the Court prefers to rule on the merits of the Motion.

**B.      Validity of the Stop**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). When an officer effectuates a traffic stop and detains a person, no matter the length of time, it constitutes a "seizure" of "persons" under the Fourth Amendment, and thus must be reasonable. *Whren v. United States*, 517 U.S. 806, 810 (1996). The court in *Whren* explained that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic

violation has occurred." *Id.*, also, *see United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). (Reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop.)

Williams does not deny that he committed a traffic infraction. In his summary of facts he states that Trooper Miller:

> observed the vehicle being driven by Williams traveling NORTH on I-65 "appeared to observe his police vehicle and abruptly change lanes, while simultaneously signaling." The Officer then activated his emergency lights and pulled the vehicle driven by WILLIAMS over for failing "to signal 300 feet as required by Indiana law."

([Filing No. 55 at 2](#)) (emphasis in original). In Indiana, "[a] vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes". Indiana Code § 9-21-8-25. The video cam evidence supports that Trooper Miller subjectively observed Williams failing to signal 300 feet before changing lanes.

Williams implies that the stop was pretext for the eventual search of his vehicle. The Court recognizes that officers may not use a traffic stop as a pretext to search for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). However, "if there was probable cause to make the stop, and if the stopping officer was acting with authority, the stop was not pretextual. 'So long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.'" *Id.* (quoting *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989)). Additionally, the Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren* at 810. Here, Trooper Miller observed Williams commit a traffic infraction and thus had probable cause to initiate a traffic stop. Therefore, the stop and initial detention were lawful.

C.     **Constitutional Duration of Traffic Stop**

Williams next argues that even if the Court concludes that the stop and detention were lawful, the duration was excessive. A seizure that is "lawful at its inception" can nonetheless violate the Fourth Amendment if it is "prolonged beyond the time reasonably required to complete" the initial mission of the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Traffic stops are not deemed unconstitutional based on their duration as long as the stop is not unreasonably prolonged. *United States v. Rodriguez*, 135 S. Ct. 1609, 1614-15 (2015). "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id*. at 1614.

Williams argues that the "prolonged detention" during his traffic stop violated his rights under the Fourth Amendment, and all evidence from the subsequent search of his vehicle must be suppressed. ([Filing No. 55 at 7](#).) He cites to *Berkemer v. McCarty*, 468 U.S. 420 (1984), a case in which the U.S. Supreme Court said, "[t]he stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask the detained a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer* at 439-440. The facts of this case clearly support the reasonableness of the length of detention under the standards of *Berkemer*.

The Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention. *Rodriguez*, 135 S. Ct. at 1614. An officer may conduct an investigatory stop of a person or vehicle if "articulable facts" support a reasonable suspicion that criminal activity is afoot. [*Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)](#). When evaluating reasonable suspicion, courts must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 441, 417(1981). The Court acknowledges that the totality-of-the-circumstances test "allows

officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Rodriguez-Escalera*, 884 F .3d 661, 670 (7th Cir. 2018), citing *U. S. v. Arvizu*, 534 U.S. 266, 273–74 (2002).

When Trooper Miller signaled for Williams to pull over, Williams did not immediately come to a stop but rolled for several seconds. When Williams exited his vehicle, he appeared nervous; he first stated that he had a driver's license and then stated he had lost his wallet; he gave a false name and two different dates of birth. Within a few minutes of the stop, Trooper Miller had identified inconsistencies in the stories of Williams and his passenger concerning where they were going, and as to Williams' true identity.

Williams admitted in his summary of facts that after conducting the traffic stop for failure to signal, "WILLIAMS was unable to provide a driver's license", (Filing No. 55 at 2) (emphasis in original). The video cam evidence supports that the length of detention in this case was driven by Trooper Miller's attempts to determine Williams' identity and to obtain information confirming or dispelling his suspicion that Williams was involved in criminal activity. As argued by the Government "any delay was due to Williams' lying about his name and providing conflicting dates of birth, making verification of his identity and driving status impossible." (Filing No. 57 at 9).

Williams mistakenly asserts in his Memorandum, "[a] short time later another officer arrived with a K9 unit to conduct a 'fresh air sniff'." (Filing No. 55 at 2.) In actuality, the K9 was Trooper Miller's partner and was always on the scene. But even in his erroneous assertion, Williams does not dispute that the K9 sniff occurred a short time later. Thus, none of the delay is attributed to waiting for the K9 to arrive on the scene.

Regarding Williams' implication that Trooper Miller's questions prolonged the stop, the questions were reasonable and limited in scope. *See United States v. Felix-Felix*, 275 F.3d 627, 633 (7th Cir. 2001) (officer conducting *Terry* stop "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions") (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). Here, the objective facts that Trooper Miller observed gave him a reasonable basis for believing that criminal activity was afoot, and his question regarding identification, where Williams was headed and other small talk did not cause unreasonable delay.

Based on the totality of circumstances, in particular Williams' misidentification and failure to have any identification, prolonged the stop. The Court does not find that the sixteen minute traffic stop was unreasonable.

### D.    Probable Cause to Search Vehicle

Finally, the Court must determine whether probable cause existed to search the vehicle. "Probable cause exists when the circumstances 'indicate a reasonable probability that evidence of a crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary.'" *United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019) (citing *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)).

After he was *Mirand*ized, Williams admitted that he had "a little weed" in his car. His admission was clearly evidence of criminal activity, and probable cause to search the vehicle. In addition, the K9 indicating the existence of drugs in the vehicle provided additional probable cause to search the vehicle. *See Florida v. Harris*, 568 U.S. 237 (2013) (determining that an alert from a reliable drug-detection dog can support a finding of probable cause). The officers had probable cause to search Williams' vehicle, therefore, the search was constitutional.

### III.  CONCLUSION

As noted above, the Government bears the burden of showing that the stop and search were reasonable under the totality of the circumstances.  For the reasons explained above, the Court determines the Government has met its burden.  Accordingly, the Motion to Suppress, (Filing No. 54), is **DENIED**.

**SO ORDERED.**

Date:  5/21/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James Adrian Earhart
attyearhart@aol.com

Jonathan M. Hodge
HODGE & SMITHER, PLLC
jhodge@hsplawpartners.com

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov